**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

FRANKIE L. SMITH,

                Plaintiff,

-vs-                                    Case No.  2:04-cv-176-FtM-29SPC

UNITED STATES OF AMERICA,

                Defendant.

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

      This matter comes before the Court on the Plaintiff Frankie L. Smith's Motion to Vacate, Set Aside, or Correct Sentence  (Doc. # 1) filed on March 22, 2004.  On February 16, 2005, a hearing was held before the Honorable Sheri Polster Chappell, United States Magistrate Judge, regarding the Plaintiff's § 2255 Motion.  The Plaintiff was represented by Thomas Ostrander, Esq. and testified on his own behalf.  The Government was represented by Assistant United States Attorney, Yolande Viacava and called Attorney Bruce Nants, Esq. as its only witness.

**TESTIMONY AND EVIDENCE**

**Frankie Lee Smith:**

      On December 18, 2002, the Plaintiff entered a guilty plea to one count of conspiracy to possess with intent to distribute fifty grams or more of cocaine base. On March 25, 2003, the Plaintiff was sentenced to 262 months imprisonment by the Honorable John E. Steele, United States District Court Judge.  At the hearing, Smith testified regarding the events that led up to his guilty plea and subsequent sentencing.

Smith testified that he was arrested on December 14, 2001, by the Collier County Sheriff's Office (CCSO) and charged in state court. He was subsequently picked up by the "feds" on November 20, 2002, and indicted on federal charges. (Tr. 8: 8-10). Smith was represented by a public defender at his initial appearance and, thereafter, he was represented by Attorney Bruce Nants who was appointed from the Criminal Justice Reform Act (CJRA) panel to represent Smith in the proceedings that followed. (Tr. 8: 20-23).

Smith testified that he met with Atty. Nants prior to his bond hearing but that he and Atty. Nants did not discuss the charges against him at that time. (Tr. 9: 5-8). He stated that Atty. Nants advised him that it would be best to waive the bond hearing. (Tr. 9: 9-12).

Smith met with Atty. Nants again in December to discuss his plea agreement. (Tr. 9: 15-17). Smith testified that Atty. Nants never discussed the indictment with him, but instead told him that he was facing life in prison because of his prior criminal background. (Tr. 11: 2-11). According to Smith, Nants told him the only way to get his sentence reduced was to plea. (Tr. 14: 17-24). Smith testified that Atty. Nants never gave him any discovery, no statements, no videos or audio tapes of prior surveillance of four previous drug sales performed at his house by the CCSO, never reviewed any discovery with him, and that he never received any correspondence or phone calls from Atty. Nants. (Tr. 12: 2-25, 13: 1-24). However, Smith did acknowledge that he had discovery from the state court for the four previous drug sale charges. (Tr. 45: 23-25).

At their second meeting, which Smith stated lasted for about twenty to thirty minutes, Atty. Nants brought Smith a copy of the plea agreement and asked him to initial and sign the agreement and that he would return later to review the agreement. (Tr. 15: 7-24). Smith testified that he did not read the whole plea agreement at that time and that Atty. Nants did not return to discuss it with him.

(Tr. 23: 19-25).   He did not see Nants again until his plea before Magistrate Judge Douglas Frazier. (Tr. 24: 1-2).   Nevertheless, on cross exam Smith did state that Atty. Nants covered the stipulated facts and Rule 35[1] motion for sentence reduction due to his agreement to cooperate with the government in its investigation of Smith's co-defendants.  Smith also testified that he understood the benefit of the plea agreement in that he would receive a reduced sentence for providing "substantial assistance" in testifying against his co-defendants. (Tr. 53: 3-17).  Again Smith claims that Atty. Nants did not discuss any defense strategy or make any plans for his defense other that to state that Smith's option was to plea to the charges. (Tr. 17: 9-14).

On December 16, 2002, Smith met with Assistant U. S. Attorney Douglas Malloy and an investigator from the CCSO for approximately forty-five minutes to an hour to discuss information he had concerning his co-defendants.  Smith stated that Atty. Nants was not present for that interview even though he asked him to be there. (Tr. 18:8-10).  Atty. Nants, however, was present for Smith's plea hearing before the Magistrate Judge Frazier.  (Tr. 20:2-6).  Smith said that Judge Frazier asked him if he understood the nature of the charges against him, if he and Atty. Nants had gone over the plea agreement, if he understood that he was waiving his right to appeal, and if he was satisfied with his attorney. (Tr. 20: 9-25).  Smith answered yes to all of Judge Frazier's questions during the plea colloquy and gave a brief recitation of the facts of the case to demonstrate that he understood why and with what he was being charged. (Tr. 72: 2-25, 73:1-25, 74: 1-1-25).  However,  Smith testified

---

[1]     A Rule 35 Motion was filed on Smith's behalf and granted by Judge Steele for his cooperation in testifying against his co-defendants.  Judge Steele reduced Smith's sentence by two levels.

that he did not understand any of the questions asked by Judge Frazier, but that he answered yes to all of the questions because he did not want to disturb the proceedings. (Tr. 66: 2-15).

Smith  disagreed with the statement of facts in his pre-sentence report (PSR).  He did not understand why he had only been charged with one count of conspiracy and yet the PSR had five counts, including the conspiracy count and the four counts for selling drugs against him in state court. (Tr. 24: 19-25, 25: 1-3). Smith testified that he attempted to call Atty. Nants on several occasions and even wrote him a letter stating his objections to the PSR, however, he testified that he was only able to speak with Atty. Nants' secretary and that Atty. Nants never responded to his written correspondence. (Tr. 23: 12-18).

On the night before his sentencing, Smith met with Atty. Nants to discuss his PSR.  Smith testified that at that meeting he had objections to the PSR report and asked Atty. Nants to make the objections during the sentencing hearing the next day. (Tr. 26: 10-16).  Smith said Atty. Nants refused to make the objections because the objections had no basis in fact or law.  Smith said a heated discussion erupted over the dispute and that he told Atty. Nants that he would ask Judge Steele for a new attorney at the hearing the following day. (Tr. 26: 13-22).  Smith then stated that Atty. Nants had no objections to his motion for a new attorney. (Tr. 27: 4-6).

At the hearing, Atty. Nants told Judge Steele that Smith had objections to the PSR but that he did not believe the objections had a basis in fact or law. (Tr. 28: 1-4).  Smith orally moved Judge Steele for new counsel but the Judge denied the motion. (Tr. 27:14-22).  Judge Steele listened to his objections but denied them all. (Tr. 85: 6-25, 86: 1-25, 87: 1-5).  Judge Steele then sentenced Smith to twenty-one years and ten months in prison. (Tr. 27: 11-13). Judge Steele told Smith that he had ten days to file an appeal of the sentence and Smith testified that Atty. Nants told Judge Steele he

would get with the Defendant regarding the appeal but that he never saw or heard from Atty. Nants again. (Tr. 28: 7-10, 38: 21-25, 23).

Smith then testified concerning his objections to the PSR.  First he stated that Atty. Nants should have moved to suppress the four charges filed against him in state court because the charges were founded upon sales made to undercover officers who wore wires into his home without a search warrant and, therefore, the evidence gather on those counts violated his Fourth Amendment Rights. (Tr. 30: 2-25).  Second, Smith stated that Atty. Nants failed to make his objections stating that he only sold 5.2 grams of cocaine and the PSR said he sold 50 grams or more. (Tr. 36: 6-25, 37: 1-3). He added that he did not understand the meaning of conspiracy and that Atty. Nants never explained it to him before he pled guilty to the charge of conspiracy to sell cocaine. (Tr. 41: 10-25, 42: 1-4). Smith testified that he did not sell the cocaine but that people would come to his house, give him money, and that he would go to Doyle Grimes', his co-defendant,  house and bring the cocaine back to them. (Tr. 40: 23-25, 41: 1-4).  Finally, Smith said the Government failed to disclose Brady material by not telling him his Fourth Amendment rights were violated when undercover officers wore wires into his house when he sold them cocaine. (Tr. 42: 5-25).

**Attorney Bruce Nants:**

Atty. Nants has practiced law for over twenty-nine years and during that time has defended thousands of criminal defendants. (Tr. 93: 19-25).  He was appointed from the CJRA panel to represent the Defendant on November 22, 2002. (Tr. 94: 13-16).  On November 27, 2002, Atty, Nants met with Smith prior to his detention hearing. (Tr. 130: 18-21). He testified that he read the indictment and that both he and Smith reviewed the charges together. (Tr. 95: 3-6).  Atty. Nants, based upon his training and experience,  advised Smith to waive the detention hearing because of

his extensive criminal past. (Tr. 95: 10-18).  Atty. Nants told Smith that he would be considered a

risk of flight and danger to the community.  Atty. Nants and Smith then met for several hours after

the detention hearing to explore Smith's criminal history and background facts. (Tr. 96: 13-18).

On December 2, 2002, Atty. Nants received the state's 568 pages of discovery material. (Tr.

130:22-25).   Regarding the discovery materials,  Atty. Nants testified that there were no DEA

records, no video or audio tapes.  (Tr. 99: 14-17).  The Discovery consisted of documents, live

testimony, police reports from the CCSO and the Fort Myers Police Department (FMPD), lab

reports, and transcripts of Smith's criminal history.  After reviewing the discovery, Atty. Nants hand

delivered the discovery to Smith at the Collier County Jail where they also met to discuss the

materials. (Tr. 98: 6-20).

Atty. Nants testified that there was no grounds for a motion to suppress because no evidence

was seized as a result of the CCSO and FMPD's investigation. (Tr. 99: 20-23).  All of Smith's

transactions with undercover officers had been hand to hand selling of drugs in Smith's front yard

or inside his house. (Tr. 99: 14-23).  Atty. Nants explained to Smith that he faced conspiracy charges

for the possession with intent to sell over 50 grams of cocaine. (Tr. 109: 18-25).

Atty. Nants testified that it is usual policy to explain to defendants that a conspiracy is like

a spider web - that you don't have to know all the people involved as long as all of the strands of

the web connect a defendant can be held responsible for the entire operation.  (Tr. 103: 6-20).  At

no time did Smith indicate that he did not understand nor did he seem confused about the charges

or the concept of being charged with a conspiracy or other information in the plea agreement. (Tr.

107-110). Further, Atty. Nants said that he had been contacted by AUSA Malloy who informed him

that he was considering filing a sentence enhancement pursuant to 21 U.S.C. § 851 which would

have ensured Smith would receive a life sentence if convicted on the charges. (Tr. 101: 5-11).  Atty. Nants' told Smith he was "cooked" and then explained the advantages of entering a plea deal to reduce his sentence.

Atty. Nants explained a Fed. R. Crim. P. 11 proffer to Smith and then spoke with AUSA Malloy again.  Atty. Nants then met with Smith again concerning the plea agreement. (Tr. 107: 10-21).  When Smith asked his advice, Atty. Nants stated that he was faced with a " Hobsons' choice," one bad, and one worse, and that he should take the plea offer. (Tr. 106: 1-6).   Atty. Nants obtain a plea packet for the United States Attorney's Office and left it with Smith with instructions that he read it over. (Tr. 106: 12-25, 107: 1-5).  Atty. Nants returned and went over the sections that he felt were very important such as the facts statement, the Rule 35 provisions, and the waiver of appeal provision. (Tr. 107:10-25, 108: 1-15).  Smith initialed each page, signed the agreement, and Atty. Nants testified that he felt positive that Smith understood all the terms and conditions of the deal before he left. (Tr. 108: 16-25, 109: 1).  Smith was left with a signed copy of the plea agreement. (Tr. 107) +Smith did not raise any objections at the plea colloquy and never stated that he was dissatisfied with Atty. Nants' performance as counsel. (Tr. 112: 5-25).  Atty. Nants testified that Smith's total focus was on getting his sentence reduced. (Tr. 113: 10-14).

After his plea and after reviewing the PSR, Atty. Nants testified that Smith agreed that 137.5 grams of cocaine could be attributed to him. (Tr. 110: 1-9).  Smith did write Atty. Nants a letter expressing three grounds for his objections to his PSR.  Contrary to Smith's account, Atty. Nants stated that he did call Smith after he received his letter. (Tr. 113:24-25, 114: 1-3).  Atty. Nants told Smith his objections were not meritorious. (Tr. 114: 14-18).  Smith became angry and told Atty. Nants that he was a lousy (expletive deleted) lawyer. (Tr. 114: 18-20).  According to Atty. Nants,

Smith wanted Nants to portray him as a minor player in the conspiracy so that he could reduce his sentence. (Tr. 116: 12-23).   Atty. Nants told Smith that his role in the conspiracy was not based upon a comparison of his actions with those of Doyle Grimes, a co-defendant and one of the leaders of the conspiracy, but on his own actions in furthering the conspiracy. (Tr. 117: 1-14).

At his sentencing hearing, Smith told Judge Steele that he wanted a new lawyer. (Tr. 121: 16-23).  Judge Steele denied the Motion.  Atty. Nants told the Judge that Smith had objections to the PSR but that he believed the objections were without merit. (Tr. 122: 12-16).  Nevertheless, Judge Steele heard the objections and ruled on each one for the record. (Tr. 122: 19-25, 123: 1-7).

After Smith's sentencing Atty. Nants went to visit him downstairs in an interview room to discuss appeal options. (Tr. 124: 10-20).  Smith said he did not give a (expletive deleted) about an appeal he just wanted his sentence reduced. (Tr. 126: 8-9).  Atty. Nants said that was the last time he had contact with Smith with the exception of a letter he received on May 17 2004. (Tr. 128: 5-10).

## DISCUSSION

Pursuant to 28 U.S.C. § 2255, there are four grounds for attacking a sentence: first, if it was imposed in violation of the Constitution or laws of the United States; second, if it was imposed without jurisdiction; third, if it was imposed in excess of the maximum authorized by law; and finally, if it is otherwise subject to collateral attack. U.S. v. Walker, 198 F.3d 811, 813 n. 5 (11th Cir. 1999).  Smith's claim that he was denied his Sixth Amendment right to effective counsel is cognizable under the terms of the statute.

The Sixth Amendment of the Constitution guarantees criminal defendants the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  A convicted Defendant making a claim of ineffective assistance of counsel

must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgement. Chateloin v. Singletary, 89 F.3d 749, 752 (11th Cir. 1996). Then, the Court must determine in light of all the circumstances, whether the attorney's performance was reasonable under the prevailing norms. Haliburton v. Secretary for Dept. of Corrections, 342 F.3d 1233, 1243 (11th Cir. 2003).

It is well settled that the Supreme Court's ruling in Strickland v. Washington, is the controlling legal standard for determining ineffective assistance of counsel claims. Haliburton, 342 F.3d at 1242. Strickland established a two pronged standard to determine whether or not counsel's assistance was ineffective. 466 U.S. at 687.  First, the defendant must show that counsel's performance was so deficient that he was not performing as the "counsel" guaranteed by the Sixth Amendment. Id.  Second, the defendant must show that counsels ineffective assistance prejudiced the defense to such a degree that the defendant was deprived of the right to a fair trial. Id.  The defendant must satisfy both prongs to prove ineffective assistance of counsel. Id.  Because the Court is reviewing the counsel's performance from hindsight, the Court must indulge a strong presumption that the counsel's conduct falls within a wide range of reasonable professional assistance. Id. at 689. Smith bears the burden of overcoming the presumption that, Atty. Nants provided competent and effective assistance of counsel in his defense. U.S. v. Cronic, 466 U.S. 648, 658, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).

In this case, Smith alleges that Atty. Nants failed to provide effective legal representation under the Sixth Amendment for the following reasons: (1) Atty. Nants should have filed a motion to suppress the four pending state charges that were used in the PSR to enhance his sentence on the grounds that the evidence used in filing those charges was obtained in violation of his Fourth

Amendment Rights; (2) Atty. Nants failed to conduct any kind of interview with the movant

regarding his PSR after it was issued in order to perfect the movant's objections prior to his

sentencing; (3) Atty. Nants failed to file an appeal of Smith's sentencing; and (4) the sentencing

court failed to replace Atty. Nants at his sentencing even through Smith complained about his

representation during the sentencing hearing.[2]

### (1) Whether Atty. Nants Should Have Moved to Suppress Evidence

Smith claims that he received ineffective assistance of counsel because Atty. Nants failed to

file a motion to suppress the four prior sales made to CCSO authorities at his home.  Smith claims

the four state sales charges were  used in his PSR to enhance his sentence.  The Government argues

that Smith's claims are procedurally defaulted, and therefore, cannot be raised in his § 2255 Motion.

Under the procedural default rule, a defendant generally must advance an available challenge

to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting

that claim in a § 2255 proceeding. Lynn v. U.S., 365 F.3d 1225, 1234 (11th Cir. 2004).  The courts

have long and consistently affirmed that a collateral challenge, such as a § 2255 motion may not be

a surrogate for a direct appeal. U.S. v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816

(1982).  Since that is the case, it is generally understood that a defendant must assert all available

claims on direct appeal. Lynn, 365 F. 3d at 1232 (citing Mills v. U.S., 36 F.3d 1052, 1055 (11th Cir.

1994)).  Therefore, relief under 28 U.S.C. § 2255 is reserved only for constitutional rights  and for

that narrow range of other injury that could not have been directly raised on direct appeal and would

---

[2]      Smith originally filed a fifth reason he received
inadequate representation based on the Supreme Court's decision in
Washington v. Blakely, _____U.S. _____, 124 S. Ct 2531, 159 L. Ed.
2d 403(2004), but that basis for reductions was withdrawn at the
hearing by his attorney Thomas Ostrander, Esq.

result in a complete miscarriage of justice. Lynn, 365 F. 3d at 1232 (citing Richards v. U.S., 837 F.2d 965, 966 (11th Cir. 1988)).

Regarding Smith's case, he failed to raise the issue on direct appeal and thus he may not now attack the sentence based upon his allegation that Atty. Nants failed to move to suppress information based on his assertion that his Fourth Amendment rights were violated by  undercover officers for wearing a wire in his house while he sold them cocaine. Lynn, 365 F. 3d at 1232.

While it is true that ineffective assistance of counsel has been found to be cause to attack a sentence without first making use of a direct appeal, the defendant must show that the ineffective assistance created actual prejudice. Frady, 456 U.S. at 168.  However, attorney error, short of ineffective assistance, does not constitute cause and will not excuse a procedural default. McCleskey v. Zant, 499 U.S. 467, 494, 111 S. Ct. 1454, 113 L. Ed 2d 517 (1991).  In this case, Atty. Nants determined that a motion to suppress would be futile because there was no hard evidence, audio or video tapes, or drug seizures to suppress because all of the transactions were hand to hand exchanges. (Tr. 99: 20-23).  Thus, Atty. Nants made a judgement call based upon his years of experience and the Court cannot second guess Atty. Nants' trial strategy. Strickland, 466 U.S. at 687.

Moreover, Smith has failed to establish that a motion to suppress would have prevented actual prejudice that would fall within that narrow range of other injury that could not have been raised on direct appeal and would have resulted in a complete miscarriage of justice.  The United States Supreme Court has defined a fundamental miscarriage of justice as a constitutional violation that caused the conviction of a person innocent of the crime. Murray v. Carrier, 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).  Here, Smith acknowledged that he was guilty of conspiracy to possess with the intent to distribute more than 50 grams of cocaine.  Thus, Smith has

failed to make a colorable showing of innocence.  As a result, his claim fails to meet that narrow window necessary to set aside the procedural default rule. <u>Mincey v Head</u>, 206 F.3d 1106, 1137 n. 67 (11th Cir. 2000).

*(2) Whether Atty. Nants Failed to Conduct any Kind of Interview with Smith Regarding His PSR*

Smith alleges that Atty. Nants only met with him for about thirty minutes the night prior to his sentencing to review Smith's objections to the PSR.  Atty. Nants claims that he phoned Smith and discussed the objections after he received a letter from Smith detailing his reasons for the objections.  Atty. Nants further testified that he told Smith that the objections had no real basis in fact or law and, therefore, he could not argue them before the Court.  Atty. Nants also met with Smith the night before the sentencing hearing.  Since there is a conflict in the testimony regarding this point, the Court must conduct a credibility analysis to determine which individual's testimony is more credible.

When weighing the credibility of witnesses, the Court does not look at the status of the witness, but rather the Court must weigh the testimonies of all the witnesses, the consistencies or inconsistencies in their testimonies, their demeanor on the stand and the witnesses' interest in the outcome of the hearing.  <u>U.S. v. Ramirez-Chilel</u>, 289 F.3d 744, 749-750 (11th Cir. 2002).

Upon review of the testimonies, the Court finds some important contradictions in Smith's statements.  Smith had stated earlier in his testimony that Atty. Nants never reviewed the plea agreement with him but merely asked that he sign and initial the agreement. (Tr. 15: 18-24). However, under cross exam Smith acknowledged that Atty. Nants did indeed cover sections of the plea agreement before he signed and initialed it. (Tr. 55: 6-25, 56: 1).  This coincides with Atty. Nants' statements that he covered the sections he considered important with Smith and asked him

if he understood the other sections or if he had any questions regarding the plea agreement. (Tr. 107:10-25, 108: 1-15).  Smith also stated that he received no discovery, however, he did admit that he had reviewed the "state court" discovery. (Tr. (Tr. 45: 23-25).  Atty. Nants produced at the hearing over 568 pages of discovery that he stated he provided to Smith. (Tr. 96:19-25, 97: 1-23). The 568 pages of discovery was information provided by the CCSO and FMPD and the records show that Atty. Nants received the information December 2, 2002. Smith states that he reviewed the CCSO's discovery but never saw any "federal discovery," however, there was no "federal discovery" in this case since the charges were picked up by the federal system pursuant to concurrent jurisdiction. (Tr. 98: 21-25).  Thus, Smith's testimony establishes that he did indeed receive the discovery in this case.

Smith also stated that he was unhappy with the quantity of cocaine he was being charged with, the performance of Atty. Nants, and that he did not understand any of the terms and consequences of pleading.  Yet when asked about these matters under oath before Magistrate Judge Fraizer during his plea colloquy, Smith stated that he understood the ramifications of his plea and that he had no problems with Atty. Nants. (Tr. 20: 5-25, 21:1-2, 72-75:1-5).

Furthermore, Smith has the most interest in the outcome of the Motion.  Smith made several statements while on the stand that he was now fifty-three years old and that a twenty-one year sentence was a life sentence for him. (Tr. 79: 1).  This also coincides with Atty. Nants' testimony that Smith's main concern through the proceedings was to reduce his sentence as much as possible. (Tr. 126: 8-9).

Thus, based upon the testimony, the demeanor of the witnesses on the stand, and Smith's interest in the outcome, the Court must conclude that Atty. Nants' testimony is more credible than

the testimony offered by Smith.  As such, the Court finds that Smith's allegation that Atty. Nants did

not review his objections except for a few minutes the night before the sentencing hearing is without

merit.

Regarding whether or not Atty. Nants should have argued Smith's objections to the PSR, the

Sixth Amendment does not require an attorney to do what he believes is unethical. U.S. v. Cronic,

466 U.S. 648, 657, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).  If there is no bona fide defense to the

charge, counsel cannot create one, and may disserve the interest of his client by attempting a useless

charade. Id.   Therefore, since Atty. Nants believed that Smith's objections had no basis in fact or

law, he did not violate the Sixth Amendment by refusing to argue the objections to the Sentencing

Court.   Furthermore, the record shows that Smith's objections were heard by and denied by the

Court.  Thus, Smith's argument that Atty. Nants failure to argue his objects to the PSR violated his

Sixth Amendment right to counsel lacks merit.

### (3) Whether Atty. Nants Erred by not Filing an Appeal of Smith's Sentence

A defendant can avoid a procedural bar only by establishing one of the two exceptions to the

procedural default rule.  Lynn v. U.S., 365 F.3d 1225, 1234 (11th Cir. 2004).   Under the first

exception, a defendant must show cause for not raising the claim of error on direct appeal and actual

prejudice. Id. (citing Bousley v. U.S., 523 614, 622, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998).

Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite

his failure to show cause for procedural default if a constitutional violation has probably resulted in

the conviction of one who is actually innocent. Lynn, 365 F.3d at 1234 (quoting Murray v. Carrier,

477 U.S. 478, 496, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986) (internal quotes omitted).  Since, Smith

plead guilty to the charges and does not contest his guilt, the second exception is moot.

To show a cause for missing the ten day (10) deadline for filing an appeal Smith must demonstrate some objective factor external to the defense that prevented Smith or Atty. Nants from filing his appeal. Lynn, 365 F.3d at 1235. The cause for the delay cannot be attributed to Smith's own conduct. Id. At the sentencing hearing, Judge Steele informed Smith that he had ten (10) days to file an appeal of the sentence. (Tr. 87:18-25, 88:1). Smith contends that Atty. Nants told him that he was coming downstairs to see him after the sentencing hearing was over but that he never saw Nants again after the hearing. (Tr. 88: 2-25, 89: 1-9). He further testified that Nants should have known that he wanted to file an appeal based upon the objections he made regarding the PSR. (Tr. 89: 10-15). However, he did admit at the hearing that he never told Atty. Nants he wanted to file an appeal but that it was Atty. Nants' lack of communication that caused that particular failure. (Tr. 89: 3-9).

Atty. Nants, on the other hand, testified that he went downstairs after the sentencing and spoke with Smith. (Tr. 124: 10-23). Atty. Nants testified that Smith's only concern was that his sentence get reduced. (Tr. 124-126). Regarding an appeal concerning his sentence, Smith response to Nants was "I don't give a (expletive deleted) about the appeal, I want my sentence reduced." (Tr. 126:8-9). Atty. Nants told Smith he had his phone number and address and if he needed him he should call or write. (Tr. 126: 10-13). The only other contact Atty. Nants had with Smith thereafter was a letter on May 17, 2004, asking about his sentence reduction. (Tr. 126: 14- 25).

The Court has already performed a credibility analysis on the differences in the testimony between Atty. Nants and Smith and determined that Atty. Nants' testimony was the more credible. Consequently, the Court must conclude that Smith failed to present any outside cause, other than his own conduct, that created the delay in filing his appeal.

Furthermore, the Court will enforce a waiver of appeal in a plea agreement if the government demonstrates that (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver. U.S. v. Cesal, 391 F.3d 1172, 1182 (11th Cir. 2004). Smith testified that while he did not understand what it meant to waive his right to appeal when asked by Magistrate Judge Frazier at the time of the plea coloquy, that he acknowledged at that time that he understood that he waiving his right to appeal. (Tr. 64: 17-25, 65: 1-13). Furthermore, Smith and Atty. Nants testified that Judge Steele informed Smith that he must file his appeal with ten (10) days of the sentence or waive his right to appeal. (Tr. 87: 22-25, 88:1, 124: 1-9). Thus, Smith's arguments that he never fully waived his right to appeal due to ineffective assistance of counsel is without merit. Lynn, 365 F.3d at 1235.

### (4) Whether the Sentencing Court Erred by not Replacing Atty. Nants at Smith's Sentencing

Smith contends that Judge Steele should have granted his request to replace Atty. Nants at the time of the sentencing. As grounds, Smith states that Atty. Nants failed to meet with him in a timely manner prior to the sentencing to discuss his objections to the PSR, and refused to make his objections to the PSR at the time of sentencing.

For an attorney's performance to be deficient, it must be established that, in light of all the circumstances, the counsel's performance was outside the wide range of professional competence. Strickland, 466 U.S. at 690. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Id. at 691-692. Accordingly, any deficiencies in the counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution. Id. at 692. In other

words, when reviewing counsel's decisions, "the issue is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled." Chandler v. U.S., 218 F.3d 1305, 1313 (11th Cir. 2000)(en banc)(internal quotations omitted).   The Defendant bears the burden of persuasion by the preponderance of the evidence, that Smith's representation was unreasonable. Id. (citing Strickland, 466 U.S. at 688).

The only argument presented to Judge Steele at the sentencing hearing as grounds for Atty. Nants' dismissal was that Atty. Nants would not make Smith's PSR objections. (Tr. 87: 13-21). However, Smith testified that he was able to argue his objections before Judge Steele and Judge Steele ruled on each objection during the sentencing. (Tr. 85:10-25. 86:1-25, 87: 1-5). Thus, the Defendant fails to provide any evidence of prejudice against his case based upon Atty. Nants' statements that he felt the objections lacked merit in fact and law.  Furthermore, as noted earlier, failure of an attorney to make an argument he believes is unethical is not grounds for incompetence under the Constitution. Cronic, 466 U.S. at 657.

Smith also alleged at the § 2255 hearing that Atty. Nants did not discuss the issues regarding his PSR until the night before his sentence was imposed. (Tr. 25: 23-25, 26:1-2).   This, too, conflicts with Atty. Nants testimony.  Even assuming the Court accepted Smith's version, an error by counsel even if professionally unreasonable, does not warrant setting aside the judgement of a criminal proceeding if the error had no effect on the judgement. Strickland, 466 U.S. at 691. Moreover, when asked by Magistrate Judge Fraizer at his plea hearing Smith stated that he was satisfied with Atty. Nants' performance. (Tr. 20: 5-14).  Thus, based upon Smith's and Nants' testimonies, he failed to present to the Court any evidence that Atty. Nants' actions would prejudiced his case in an unconstitutional manner.

Accordingly, it is now

**RECOMMENDED:**

The Plaintiff Frankie L. Smith's Motion to Vacate, Set Aside, or Correct Sentence  (Doc. # 1) should be **DENIED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended at Fort Myers, Florida, this ___4th___ day of May, 2005.


_SHERI POLSTER CHAPPELL_
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE


Copies:
Counsel of Record
DCCD