UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FRANKIE L. SMITH,

               Petitioner,

vs.                           Case No. 2:04-cv-176-FTM-29SPC
                              Case No. 2:02-cr-72-FTM-29SPC

UNITED STATES OF AMERICA,

               Respondent.

_____

## OPINION AND ORDER

This matter is before the Court on consideration of Frankie L. Smith's (Smith or petitioner) timely Motion to Vacate, Set Aside, or Correct Sentence (Cv. Doc. #1)[1], filed on March 22, 2004. The government filed a Response (Cv. Doc. #6) on June 1, 2004, and the matter was referred to the magistrate judge on June 30, 2004, for an evidentiary hearing concerning the ineffective assistance of counsel claims. (Cv. Doc. #7). Counsel was appointed for petitioner on September 24, 2004 (Cv. Doc. #14), and was directed to file a memorandum setting forth with greater clarity the issues raised by petitioner. (Cv. Doc. #17). In due course court-appointed counsel filed a Memorandum (Doc. #32) re-iterating four of the five ineffective assistance of counsel arguments raised in the petition. The Memorandum also added a claim of error under

_____

[1]Unless otherwise specified, docket numbers referring to the criminal case are cited as (Cr. Doc.) and docket numbers referring to the civil case are cited as (Cv. Doc.).

<u>Blakely v. Washington</u>, 542 U.S. 296 (2004) and added an issue of ineffective assistance of trial counsel for failure to collect Rule 16 materials which could have resulted in a motion to suppress and/or objections to sentencing enhancements. The government filed an Amended Response (Cv. Doc. #34) on February 7, 2005, and an evidentiary hearing was held by Magistrate Judge Sheri Polster Chappell on February 16, 2005.

On May 5, 2005, Magistrate Judge Chappell filed her Report and Recommendation (Cv. Doc. #38) recommending that the § 2255 motion be denied. Petitioner's counsel did not file any objection to the Report and Recommendation, but petitioner filed an Emergency Motion Pursuant to Rule 60(b), etc. (Cv. Doc. #39), the effect of which was to seek permission to file *pro se* objections to the Report and Recommendation. The Court filed an Order (Cv. Doc. #40) on June 20, 2005, allowing petitioner or his attorney to file objections within twenty days. On July 11, 2005, petitioner filed an Affidavit (Cv. Doc. #41), which the Court construes to be objections to the Report and Recommendation.

**I.**

On November 13, 2002, petitioner was charged in two counts (Counts One and Eleven) of a fourteen count Superceding Indictment (Cr. Doc. #37). Count One charged petitioner with conspiracy to possess with intent to distribute 50 grams or more of cocaine base, crack cocaine, from August, 2001 until February 15, 2002; Count

2

Eleven charged that on November 19, 2001, petitioner knowingly and willfully possessed with intent to distribute a quantity of cocaine base, crack cocaine.  (Cr. Doc. #37).  On December 13, 2002, a written Plea Agreement (Cr. Doc. #78) was filed.  On December 18, 2002, petitioner testified as a government witness in the trial of Doyle Grimes, a co-defendant (Cr. Doc. #219, p. 279).  The next day, on December 19, 2002, petitioner pled guilty pursuant to the Plea Agreement to Count One of the Superceding Indictment.  On March 25, 2003, petitioner received a sentence of 262 months imprisonment, followed by 60 months supervised release, and a $100 special assessment.  Judgment (Cr. Doc. #166) was entered the same day.  No direct appeal was filed.

## II.

As a preliminary matter, petitioner's Affidavit (Cv. Doc. #41), when read liberally, may be deemed to raise three additional issues not previously set forth in the Motion (Cv. Doc. #1) or in counsel's clarifying Memorandum (Cv. Doc. #32).  Petitioner asserts: (1) his guilty plea was not made knowingly and voluntarily (Cv. Doc. #41, p. 4); (2) the factual basis for his guilty plea did not establish a conspiracy (Cv. Doc. #41, pp. 18-20); and (3) the sentence waiver provision in the Plea Agreement was not made knowingly (Cv. Doc. #41, pp. 2-3, 10-11). These issues do not arise from the same set of facts as any timely claim, and therefore do not relate back to the original Motion and are untimely because

3

they were filed more than one year after the limitations period set forth in § 2255. Farris v. United States, 333 F.3d 1211, 1215-16 (11th Cir. 2003); Davenport v. United States, 217 F.3d 1341 (11th Cir. 2000), cert. denied, 532 U.S. 907 (2001).[2] In an abundance of caution, however, the Court will nonetheless address these issues. For the reasons set forth below, the Court finds that the record establishes that none of these claims have merit.

**A.**

"A guilty plea is more than a confession which admits that the accused did various acts. It is an admission that he committed the crime charged against him. By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." United States v. Broce, 488 U.S. 563, 570 (1989)(internal quotations and citations omitted). For this reason, the United States Constitution requires that a guilty plea must be voluntary and defendant must make the related waivers knowingly, intelligently and with sufficient awareness of the relevant circumstances and likely consequences. United States v. Ruiz, 536 U.S. 622, 629 (2002); Hill v. Lockhart, 474 U.S. 52, 56 (1985); Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976). To be

_____

[2]The Court concludes that the new ineffective assistance of counsel claim raised by court-appointed counsel in the clarifying Memorandum does arise from the same set of facts as some of the claims in the original Motion, and therefore relates back and is timely.

4

voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999). "[T]he representations of the defendant, his lawyer, and the prosecutor at such a [guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

A sentence appeal waiver is valid if made knowingly and voluntarily. Williams v. United States, 396 F.3d 1340, 1341 (11th Cir. 2005). Such waivers "will be enforced if the government demonstrates *either* (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver." United States v. Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir.)(emphasis in original), cert. denied, 125 S. Ct. 2279 (2005).

**B.**

Petitioner signed a Plea Agreement on December 13, 2002, and testified as a government witness in the Doyle Grimes trial on December 18, 2002.  Petitioner then plead guilty on December 19, 2002.

During the guilty plea colloquy the magistrate judge advised petitioner that his answers were given under penalty of perjury and petitioner was placed under oath (Cr. Doc. #116, pp. 2-3). Petitioner informed the Court that he read and wrote English well enough to be able to read and understand the plea agreement and the charges in the case (id. at 3); that he was not under the influence of anything which would interfere with his ability to think or concentrate, that he understood why he was in court and was clear-headed (id. at 4-5); that he had read the Superceding Indictment, reviewed and discussed it with his attorney, and understood the charge (id. at 5); that he was satisfied with the services of his attorney (id.); and that no one did anything he considered wrong or unfair to get him to plead guilty, and there had been no threats, coercion or improper pressure placed on him (id. at 6).  Petitioner stated he wanted to plead guilty because he was in fact guilty of the charge.  (Id.).  Petitioner examined the Plea Agreement, stated that he read it and discussed it with his attorney before signing it, and understood its content (Id. at 6-7).  Petitioner stated that he understood that the sentencing judge would not be bound by

the stipulated facts in the Plea Agreement in the determination of the sentence.  (Id. at 7-8).  The Court advised petitioner of the offense in Count One, its elements, and its maximum penalties, and petitioner stated that he had discussed the Sentencing Guidelines with his attorney and knew the court could take his actual conduct into account in determining the sentence.  (Id. at 9-10, 16-17).

In the Plea Agreement petitioner expressly waived his right to appeal his sentence "directly or collaterally, on any ground except for an upward departure by the sentencing judge, a sentence above the statutory maximum, or a sentence in violation of the law apart from the sentencing guidelines . . ."  (Cr. Doc. #78, p. 12, ¶5).  During the plea colloquy the Court drew petitioner's attention to this provision, and petitioner stated that he understood what the provision meant, and that the waiver was made knowingly and intelligently.  (Cr. Doc. #116, pp. 11-12).

The Court advised petitioner of the appropriate Rule 11 rights.  (Id. at 14-16).  When asked to tell the Court what he had done that made him guilty of the charged conspiracy, petitioner stated that in September, 2001, he had his fiancee call Doyle Grimes and order $400 worth of crack cocaine; that Grimes delivered the crack cocaine to his house; that during the same month he would go to Grimes on a number of occasions and purchase crack cocaine; that he believed that at least 50 grams of crack cocaine was involved in the conspiracy; and that he read the factual basis in

the Plea Agreement and did not have any disagreement with the facts contained at pages 14-15 of the Plea Agreement (Id. at 17-18).  The facts in the Plea Agreement (Cr. Doc. #78, pp. 14-15) stated that on November 19, 2001, petitioner sold crack cocaine to a confidential informant in Immokalee, Florida, and the sale was electronically monitored by the Collier County Sheriff's Office; that Stephanie Goodman [petitioner's fiancee] told investigators that for several years petitioner received various quantities of crack cocaine from Curtis Grimes; that Curtis Grimes introduced petitioner and herself to Doyle Grimes and Andre Waller for the purpose of obtaining crack cocaine; that petitioner had been selling between $200 and $1,000 worth of crack cocaine daily for six months, and during the time frame of August 2001 through December 2001 the quantity was well in excess of 50 grams of crack cocaine.  The Court found that petitioner's guilty plea was knowingly, intelligently and voluntarily made, and recommended it be accepted.  (Cr. Doc. #116, p. 19).  The Court accepted the guilty plea by written Order (Cr. Doc. #117) on December 31, 2002.

**C.**

Petitioner argues that he made four sales to undercover state officers/informants in August, September, and October, 2001, that were the basis of a state prosecution, and a fifth sale on November 19, 2001 to a state officer which was later used in the federal prosecution (Count 11).  Petitioner argues that he did not know the

8

drug quantities from the four state transactions would be used against him at the federal sentencing, and if he had known he would not have pled guilty.  (Cv. Doc. #41, pp. 2, 4).

This assertion is clearly refuted by the record.   At petitioner's sentencing hearing, he told the Court that he had made five controlled sales to an undercover agent totaling 5.2 grams of crack cocaine, and that he pled guilty to a conspiracy involving more than 50 grams of crack cocaine.  Petitioner argued that because of this, and the factual circumstances of his state charges, he should receive a sentence reduction for a minor role in the offense.  (Cr. Doc. #260, pp. 11-12).  Petitioner then stated "I knew that my state charges were related to my federal charges," and asked if he would receive credit for time served on his federal sentence.  (Cr. Doc. #260, pp. 13-14).  Given the plea colloquy and petitioners statements at the sentencing hearing, it is clear that petitioner entered his guilty plea knowingly and voluntarily.

Petitioner next argues that the facts of the case do not establish a conspiracy, but rather simply show a series of buyer-seller relationship.  (Cv. Doc. #41, pp. 18-21).  This too is refuted by the record.  When petitioner testified as a government witness in the Doyle Grimes trial, the prosecutor asked if it would be fair to say petitioner was a drug dealer.  Petitioner responded: "I wouldn't say I was a drug dealer.  I was running a crack house and I would go purchase drugs for other people.  I would get some

of it off of it and bring it back to them and we would sit down and smoke it together.  Some of it I sold." (Cr. Doc. #219, p. 280). While petitioner initially disputed the existence of a conspiracy with Doyle Grimes (id. at 286), this description and his other trial testimony clearly showed a fairly typical drug conspiracy. (Id. at 285, 291-94, 311).  Petitioner conceded during this trial testimony that he was admitting to a conspiracy for over 50 grams of crack cocaine (id. at 296), and made the decision to plead guilty because he was guilty. (Id. at 306).  Additionally, the factual basis at the guilty plea colloquy summarized above clearly established the existence of a conspiracy between petitioner and others within the time frame of Count One.  Indeed, at sentencing petitioner recognized this by stating: "I looked over my - - when I first looked at my evidence, I didn't feel like I was, that it was the right, but the more I looked at it it did because I was involved in a conspiracy." (Cr. Doc. #260, p. 19).  Not only does the valid guilty plea preclude petitioner from challenging the existence of a conspiracy, the record clearly establishes the existence of the conspiracy and petitioner's participation in the charged conspiracy.

Finally, petitioner asserts that he did not knowingly agree to the appeal/collateral attack waiver.  (Cv. Doc. #41, pp. 2-3, 10-11).  The record in this case establishes that the magistrate judge brought this waiver provision to petitioner's attention during the

guilty plea and elicited that petitioner knew what it meant.  The magistrate judge found the entry of the guilty plea was made knowingly, intelligently and voluntarily.  (Cr. Doc. #116, p. 19).  The Court finds the waiver to have been made knowingly and voluntarily.

### III.

The next group of issues relate to the ineffective assistance of counsel claims discussed in the magistrate judge's Report and Recommendation (Cv. Doc. #38).  After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's report and recommendation.  28 U.S.C. § 636(b()1); Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983).  A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party."  Jeffrey S. by Ernest S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990)(quoting H.R. REP. No. 94-1609, 94th Cong., 2d Sess., reprinted in 1976 U.S.C.C.A.N. 6162, 6163).  The district judge reviews legal conclusions de novo, even in the absence of an objection.  See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994); Castro Bobadilla v. Reno,

826 F. Supp. 1428, 1431-32 (S.D. Fla. 1993), aff'd, 28 F.3d 116 (11th Cir. 1994) (Table).  The undersigned has read the transcript (Cv. Doc. #37) of the February 16, 2005 evidentiary hearing.

### A.

Issues of ineffective assistance of counsel can be raised in a § 2255 proceeding even where petitioner could have raised the issues on direct appeal but failed to do so.  Massaro v. United States, 538 U.S. 500 (2003).  The Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  See also Florida v. Nixon, 125 S. Ct. 551 (2004); Wiggins v. Smith, 539 U.S. 510 (2003); Williams v. Taylor, 529 U.S. 362 (2000).  A court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).  This judicial scrutiny is "highly deferential."  Id. A court must adhere to a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90. An attorney is not ineffective for failing to raise a meritless issue. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992). In light of the general principles and presumptions applicable to ineffective assistance of counsel claims, the cases in which *habeas* petitioners can prevail are few and far between. Chandler v. United States, 218 F.3d 1305, 1313-14 (11th Cir. 2000)(*en banc*), cert. denied, 531 U.S. 1204 (2001).

**B.**

The first issue is whether petitioner received ineffective assistance of counsel because his trial attorney failed to argue that evidence used to secure the Superceding Indictment and sentence was obtained pursuant to an unconstitutional search and seizure. Petitioner argues that on four occasions in August, September, and October, 2001, Collier County Sheriff Office deputies equipped with electronic surveillance equipment entered his private premises without a search warrant solely to make controlled purchases of illegal drugs from petitioner. Petitioner argues that this entry to purchase drugs required a search warrant, and the failure of his attorney to raise this issue was ineffective assistance of counsel.

The Court disagrees with petitioner for a number of reasons. First, the Fourth Amendment exclusionary rule does not apply to grand jury proceedings. United States v. Calandra, 414 U.S. 338,

13

349-55 (1974). Assuming the conduct violated the Fourth Amendment and evidence derived from this conduct was in fact presented to the grand jury, the validity of the Superceding Indictment would be unaffected. Since the issue was without merit, the failure to challenge the Superceding Indictment was not deficient performance by counsel and did not result in prejudice to petitioner.

Second, evidence which has been obtained in violation of the Fourth Amendment can be properly considered by a sentencing judge without rendering the sentence unlawful. United States v. Lynch, 934 F.2d 1226, 1234-37 (11th Cir. 1991), cert. denied, 502 U.S. 1037 (1992). Assuming the conduct violated the Fourth Amendment, the evidence presented to the sentencing judge was not subject to proper objection on this ground. Therefore, the failure to raise this issue at sentencing was not deficient performance by counsel and did not result in prejudice to petitioner.

Third, the valid sentence-appeal waiver precluded petitioner from attacking the sentence through a claim of ineffective assistance of counsel during sentencing. United States v. Williams, 396 F.3d 1340 (11th Cir. 2005).

Fourth, assuming the deputies entered petitioner's residence equipped with electronic monitoring/recording equipment when they made the undercover drug buys from petitioner, they did not violate petitioner's Fourth Amendment rights. A search warrant is not required before an undercover officer may enter a residence to

14

conduct the undercover drug transaction. United States v. White, 401 U.S. 745, 749 (1971); Lewis v. United States, 385 U.S. 206, 211 (1966); United States v. Sonntag, 684 F.2d 781, 785-86 (11th Cir. 1982). Additionally, no search warrant is required before the conversations between a putative defendant and an undercover officer or informant may be surreptitiously recorded or monitored with the consent of the officer/informant. White, 401 U.S. at 749; Hoffa v. United States, 385 U.S. 293, 302 (1966); United States v. Smith, 918 F.2d 1551, 1558 (11th Cir. 1990); United States v. Davanzo, 699 F.2d 1097, 1100 (11th Cir. 1983). Contrary to petitioner's argument, there can be no taint from these state purchases because they were not illegal under the Fourth Amendment. Therefore, these Fourth Amendment issues were without merit, and the failure to argue this point to the trial court was not deficient performance and did not prejudice defendant.

The Court declines to accept the Report and Recommendation to the extent that it finds this ineffective assistance of counsel issue to have been procedurally defaulted. (Cv. Doc. #38, p. 11). While the substantive Fourth Amendment issues are procedurally defaulted, the Supreme Court has excepted ineffective assistance of counsel claims from the general procedural default rule. Massaro, 538 U.S. at 503-04; United States v. Lynn, 365 F.3d 1225, 1234 n. 17 (11th Cir.), cert. denied, 125 S. Ct. 167 (2004).

C.

The second issue is whether petitioner received ineffective assistance of counsel because his trial attorney did not meet with him about the presentence report until the day before sentencing, and then failed to properly interview petitioner concerning the objections he wished to make prior to sentencing.  After reading the transcript of the evidentiary hearing and petitioner's Affidavit (Cv. Doc. #41), the Court fully adopts the Report and Recommendation as to this issue.  The Court finds that counsel's performance was not deficient and that no prejudice resulted to petitioner.

**D.**

The third issue is whether petitioner received ineffective assistance of counsel because his trial attorney failed to file a notice of appeal.  The Court declines to adopt the Report and Recommendation to the extent that it suggests that this issue was procedurally defaulted by petitioner and to the extent it suggests that the valid waiver of appeal provision allows counsel not to file a notice of appeal if requested to do so by petitioner.  As discussed above, the ineffective assistance of counsel issue is an exception to the general procedural default rules in a § 2255 proceeding.  Massaro, 538 U.S. at 503-04; Lynn, 365 F.3d at 1234 n.17.  Additionally, the law is clear that an attorney is ineffective if he disregards specific instructions to file a notice of appeal, even if an appeal would have no meritorious issues.

16

Flores-Ortega, 528 U.S. at 477; Martin v. United States, 81 F.3d 1083 (11th Cir. 1996); Gray v. United States, 834 F.2d 967 (11th Cir. 1987).

While petitioner's Affidavit states that he "asked Atty. Nants to file an appeal for him after sentencing," (Cv. Doc. #41, p. 2), petitioner conceded at the evidentiary hearing that he gave counsel no such specific instruction to file an appeal.   (Cv. Doc. #37, pp. 88-89).  While petitioner and his former counsel disagreed as to whether there was a meeting after sentencing to discuss the possibility of an appeal, the Court credits the testimony of former counsel for the reasons set forth in the Report and Recommendation. The Court finds that former counsel did consult with petitioner about whether he wished to file a notice of appeal, that petitioner did not instruct counsel to file an appeal, and that petitioner was only concerned about getting his sentence reduced by way of substantial assistance.  The Court finds that counsel's failure to file a notice of appeal was reasonable and was not deficient performance.

**E.**

The fourth issue is whether petitioner received ineffective assistance of counsel because his trial attorney failed to obtain Rule 16 material which would have shown that the four state transactions violated the Fourth Amendment thereby spurring a motion to suppress.  The record reflects that petitioner received

17

discovery in the state case prior to his federal indictment, and that his federal attorney received over 500 pages of discovery from the government. For the reasons discussed above, there was no *bona fide* Fourth Amendment issue which could have been revealed by discovery, even if the Court assumes there were materials counsel did not obtain. The Court finds there was no deficient performance and no prejudice to petitioner even if the discovery described by petitioner was not obtained by counsel.

### F.

The fifth issue is whether petitioner received ineffective assistance of counsel at sentencing. The record shows that counsel was effective at sentencing. Counsel candidly argued his points to the Court, and petitioner was allowed to raised objections which counsel could not ethically raise. These objections were properly overruled. The Court finds that counsel's performance at sentencing was not deficient and that there was no prejudice to petitioner.

### IV.

The final set of issues relate to alleged errors by the district court or the government at the sentencing hearing. The Court concludes that none of these issues have merit.

### A.

The first issue is whether the sentencing court erred in failing to allow petitioner's court-appointed attorney to withdraw

18

at sentencing and in not appointing a new attorney for the sentencing hearing. After reading the transcript of the evidentiary hearing and petitioner's Affidavit (Cv. Doc. #41), the Court fully adopts the Report and Recommendation as to this issue. There was no conflict of interest or breakdown of the attorney-client relationship which required a new attorney, and all the sentencing petitioners wished to have raised were raised at the sentencing hearing.

**B.**

The second issue is whether the government violated the Plea Agreement by urging the Court to adopt the calculation of the Sentencing Guidelines as set forth in the Presentence Investigation Report and urging the Court to depart upward based upon relevant conduct. Petitioner asserts that the Plea Agreement set forth the calculation under the Sentencing Guidelines, and that the government's conduct in urging the adoption of a contrary calculation in the Presentence Report and in urging an upward departure violated the Plea Agreement. The Court finds that the record establishes there is no merit to this issue.

The Plea Agreement does not compel any particular calculation of the Sentencing Guidelines. Indeed, in the Plea Agreement the government reserved its right to report all information about the conduct of petitioner, including the totality of his criminal activity not limited to the count to which he pled guilty. (Cr.

19

Doc. #78, p. 10).  Additionally, there was no enhancement for drug amount in the Presentence Report above the more than 50 grams admitted by petitioner.  The Probation Office calculated the base offense level at 32 because the offense involved at least 50 grams of cocaine base but less than 150 grams.  Petitioner admitted at least 50 grams, and the base offense level was not enhanced by any amount beyond that range. However, since petitioner scored as a career offender, the base offense level was enhanced on that basis.

### C.

The third issue is whether the Court erred in considering the four uncharged state sales to increase the base offense level. (Cv. Doc. #32, p. 9).  As discussed above, the 5.2 grams from the state sales did not increase the base offense level above that which resulted from petitioner's admission of involvement with over 50 grams of crack cocaine.  In any event, this issue is procedurally defaulted and subject to the sentence appeal waiver provision of the Plea Agreement.

### D.

The fourth issue is whether petitioner was sentenced in violation of _Blakely_, now _United States v. Booker_, 125 S. Ct. 738 (2005).  Both _Booker_'s Sixth Amendment holding and its remedial interpretation apply to all cases on direct review, and courts are to apply ordinary prudential doctrines.  _Blakely_ and _Booker_ do not apply retroactively to § 2255 cases on collateral review.  _Varela_

20

v. United States, 400 F.3d 865, 867-68 (11th Cir. 2005); United States v. White, 416 F.3d 1313, 1316 (11th Cir. 2005).   Thus, Booker does not apply retroactively to criminal cases that become final before its release on January 12, 2005.  McReynolds v. United States 397 F.3d 479 (7th Cir.), cert. denied, 125 S. Ct. 2559 (2005).  Petitioner's conviction became final ten days after entry of the March 25, 2003 criminal judgment (Cr. Doc. #166).  Mederos v. United States, 218 F.3d 1252 (11th Cir. 2000).   Thus, petitioner's conviction became final on April 4, 2003, and Blakely and Booker issues cannot be litigated in this § 2255 proceeding.

Accordingly, it is now

**ORDERED**:

1.  With the exceptions noted above, the Court **accepts and adopts** the Report and Recommendation (Cv. Doc. #38).

2.  Frankie L. Smith's Motion to Vacate, Set Aside, or Correct Sentence (Cv. Doc. #1) is **DENIED.**

3.  The Clerk of the Court shall enter judgment accordingly and close the civil file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___6th___ day of September, 2005.


JOHN E. STEELE
United States District Judge

21

Copies:
Hon. Sheri Polster Chappell
U.S. Magistrate Judge

Counsel of Record
Frankie L. Smith